UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
SANTOSCMI S.A.,

   Plaintiff,        Case No: 17-cv-7122 (AT)

 -against-

HYUNDAI ENGINEERING &
CONSTRUCTION CO., LTD.,     **REPLY DECLARATION
OF DAVID MEDINA
IN FURTHER SUPPORT OF PLAINTIFF'S
APPLICATION FOR RESTRAINTS**

   Defendant.

------------------------------------- X

  I, **David Medina**, declare under penalty of perjury pursuant to 28 U.S.C. § 1476, that:

  1. I have reviewed declarations that were submitted by Defendant, Hyundai Engineering & Construction Co., Ltd. (hereinafter "HDEC") in connection with its opposition to the application of Plaintiff, SANTOSCMI S.A. (hereinafter the "Plaintiff") to stay HDEC's arbitration against it, and hereby submit this reply declaration in response to HDEC's opposition and in further support of my original declaration and Plaintiff's application for a stay of the arbitration. All documents attached hereto are true and correct copies of the originals.

  2. In reviewing the declarations submitted by HDEC, I noticed several significant factual inaccuracies in those declarations. First, I noticed that, at paragraph 38 of the Declaration of Ki Hwan Kwon, Mr. Kwon states that Plaintiff and HDEC entered into an "Addendum" to the Subcontract Agreement, referring to Exhibit 14 of his declaration, which I have also reviewed. Mr. Kwon's assertion that this is an Addendum to the Subcontract and that Plaintiff entered into this document is completely incorrect.

  3. The document Mr. Kwon refers to is not an addendum or amendment to the Subcontract, and was never intended to be an amendment or addendum to the Subcontract. This document does not amend any specific clause of the Subcontract Agreement. There is no

language in this document that would lead HDEC to believe this was an amendment to the Subcontract. Instead the document was more likely a meeting minute, in which SCMI UY and HDEC, and the other meeting participants, discussed issues affecting the Project, and noted a plan as to how to expedite the completion dates for three (out of nineteen) buildings.

4. Further reflecting that Mr. Kwon's Exhibit 14 was not an amendment to the Subcontract, HDEC's Subcontract with SCMI UY has a prescribed form for amendment to the Subcontract. At the end of Section 2 of the Subcontract are the mandatory prescribed forms to be used in connection with the Subcontract and the Project. Form G is the "Form of Amendment for Subcontract Agreement". Mr. Kwon's Exhibit 14 was not in the form of Exhibit G, and therefore, was not, and was never intended to be, an amendment to the Subcontract. (For the Court's convenience, attached hereto as **Exhibit "A"** is a true and correct copy of the Form G in Section 2 of the Subcontract).

5. In addition, the person that signed Exhibit 14 from "SANTOS CMI" was Juan A., Santos. This was Juan Andres Santos, but Mr. Santos was not affiliated with Plaintiff. Instead, Mr. Santos was employed by Santos CMI Inc. (USA) as its VP of International Operations, and SCMI USA is a Texas corporation based in Houston and a subsidiary of EPC EQUITIES, just like SCMI UY. Plaintiff and Santos USA are separate and independent corporations. Mr. Santos was not employed by any other entity except Santos USA and Plaintiff did not even have an executive position known as a VP of International Operations. I have attached hereto as **Exhibit "B"**, "Resolutions by the Written Consent of the Sole Shareholder of SANTOS CMI INC. (USA)", which shows that Mr. Santos was the Vice President of International Operations for Santos USA.

6.    As part of his overall responsibilities, he would oversee and try to spearhead any issues on any of the international projects that were being performed by the various companies within the organization, and thus, he simply oversaw parts of this project from a very high level. Occasionally, Mr. Santos travelled to the project to check on the progress and the status of work at the site. This was the extent of Mr. Santos' involvement in the project.

7.    Also, there were references in Mr. Kwon's Declaration, at paragraph 31, where he mentions Yong Il Lee, and states that Mr. Lee is the CEO of Plaintiff. To clarify Mr. Lee's involvement in the project, Mr. Kim retired as CEO and left Plaintiff in 2014, and Mr. Lee came from Posco in Korea to assume his role as Plaintiff's CEO.

8.    Mr. Lee had no involvement in the project until there were disputes between SCMI UY and HDEC. Mr. Lee tried to help mediate these disputes, since he was Korean, but, unfortunately, his attempts did not help the parties come to a resolution. This was the extent of Mr. Lee's entire involvement in the project.

9.    Also, in reading HDEC's opposition papers, I noticed that HDEC states many times that it was confused and did not realize that SCMI UY was the party performing the work. These assertions are incorrect. I refer the Court to my previous declaration (particularly paragraphs 22-24, 28-39) as evidence that HDEC did in fact know that SCMI UY, and not Plaintiff, was intended to be the party performing work under the Subcontract, and was in fact the one that performed the Subcontract work.

10.    However, as further support that HDEC was aware that SCMI UY was going to be the one to perform the project work, I have attached an email chain dated November 27, 2013, which HDEC submitted as evidence in the arbitration as Annexure 25 to Mr. Kwon's Witness Statement. This email chain is between Napoleon Garnica, who was the project manager for the

3

Uruguay project, and Mr. Kwon.  (Attached hereto as **Exhibit "C"** is a true and correct copy of Mr. Kwon's Witness Statement from the Arbitration and attached hereto as **Exhibit "D"** is a true and correct copy of the email chain between Napoleon Garnica and Ki Hwan Kwon, dated November 27, 2013).

11.As part of this email chain, Mr. Kwon asks Mr. Garnica for an update on the "progress status of mobilization plan and site entering documents."  (*See* Exhibit "D", p.3).  In Mr. Garnica's response, he states that "SANTOS CMI Uruguay accountability is ready to start operations."  (*See* Exhibit "D", p.2).

12.Mr. Garnica´s statement refers to the accounting of SCMI UY being reactivated after the company was dormant from its last project.  I refer the Court to paragraphs 14-18 of my previous declaration where I explained the common practice of companies becoming dormant when there is minimal in-country work to be performed.  Even during its dormant period, SCMI UY always fulfilled and complied with its accounting and taxation requirements, which further demonstrates its existence as an independent company.

13.Based upon this email and many other clear indications, as set forth in my previous declaration, HDEC's assertion that it did not know that SCMI UY was the party that would be performing the work under the contract is incorrect.

Date:   October 06, 2017
DAVID MEDINA